**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICHARD S. STEELE,**

                                        **Plaintiff,**

        v.                                                        **5:20-CV-00220**

**STATE OF NEW YORK, VALERIE COX, individually**
**and as a representative of the New York State**
**Department of Transportation, NEW YORK STATE**
**DEPARTMENT OF TRANSPORTATION, ELATISHA**
**KIRNON, individually and as a representative of the**
**New York State Governor's Office of Employee Relations,**
**and NEW YORK STATE GOVERNOR'S OFFICE OF**
**EMPLOYEE RELATIONS,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION and ORDER**

**I.      INTRODUCTION**

        Plaintiff Richard Steele, an employee of the New York State Department of

Transportation ("DOT"), brings this action pursuant to Title VII of the Civil Rights Act of

1964 ("Title VII") and 42 U.S.C. § 1983 ("Section 1983") alleging that the defendants

subjected him to unlawful retaliation and violated his constitutional rights in relation to his

December 2017, February 2018, and December 2019 disciplinary proceedings.

Defendants the State of New York, DOT, the Governor's Office of Employee Relations

("GOER"), Elatisha Kirnon, and Valerie Cox move to dismiss the Complaint pursuant to

1

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. No. 11.  Plaintiff opposes the motion, Dkt. No. 14, and defendants reply. Dkt. No. 15.

## II.    BACKGROUND[1]

Plaintiff is an Environmental Specialist employed by DOT. Dkt. No. 1 at ¶ 1. He has been employed by DOT since September 1989. *Id.*

Between December 2017 and December 2019, DOT issued three Notices of Discipline to plaintiff relating to various acts of misconduct.  The first two of these Notices of Discipline were issued by Defendant Valerie Cox, DOT Administrative Services Director. *See* Dkt. Nos. 1-3; 1-7.  On December 22, 2017, DOT issued a Notice of Discipline to plaintiff charging him with harassment of Ezmaralda Abboud, a female security guard in his office building. Dkt. No. 1-3 (December 22, 2017 Notice of Discipline).  Plaintiff was placed on paid administrative leave. Dkt. No. 1 at ¶ 15.  The December 22, 2017 Notice of Discipline charged plaintiff with repeatedly asking Ms. Abboud to accompany him to dinner or on his boat and touching the back of her hand while walking by her workstation, causing Ms. Abboud to feel nervous and uncomfortable. *Id.*; *see* Dkt. No. 1-3.  The December 22, 2017 Notice of Discipline was initiated by the complaint of Kristine Olson (formerly Kristine Crimi), Ms. Abboud's supervisor.  *See* Dkt. No. 1 at ¶ 23.  On December 26, 2017, in response to the Notice of Discipline, plaintiff filed a grievance through his union representative and sought arbitration under Article 33 of the PEF Collective Bargaining Agreement. Dkt. No. 1-4. However, the matter was resolved by agreement, under which plaintiff was issued a "non-disciplinary counseling memo" and permitted to return to work

---

[1]The well-pleaded allegations of the Complaint are assumed true for the purposes of this motion to dismiss. *See Morris v. New York State Police*, 268 F. Supp. 3d 342, 359 (N.D.N.Y. 2017).

on January 18, 2018. Dkt. No. 1 at ¶ 17.  Plaintiff alleges that the "case against [him] was exceedingly weak, and the DOT sought to resolve the complaint without termination due to the lack of evidence of misconduct." *Id.* Plaintiff alleges that "within weeks of the discontinuance of the disciplinary proceeding, the DOT reassigned [him] to a new work station thus altering the terms of his employment without good cause." *Id.* at ¶ 20.

On February 15, 2018, DOT issued a second Notice of Discipline to plaintiff, charging him with misconduct arising out of a January 22, 2018 incident at MJ's Music Bar in Fulton, New York.  Dkt. No. 1-7.  As stated in the Notice of Discipline, while present in MJ's Music Bar, plaintiff allegedly made several disparaging comments related to the circumstances surrounding the December 22, 2017 Notice of Discipline. *Id.*   Plaintiff alleges that, while at the bar, he encountered Grace Crimi, the daughter of Kristine Olson (formerly Kristine Crimi), who was "the woman who previously accused [plaintiff] of wrongfully touching Ms. Abboud." Dkt. No. 1 at ¶ 23.  Plaintiff alleges that he "refused to discuss the matter with Grace Crimi" and that Crimi told him, unsolicited, that he "had nothing to worry about" and "did nothing wrong." *Id.*  On or about January 23, 2018, Kristine Olson submitted an Incident Investigation Report in which she relayed Grace Crimi's account of plaintiff's statements at MJ's Music Bar on January 22, 2018.  Dkt. No. 1-6.  Plaintiff alleges that this incident report provided "manufactured details as to what Grace Crimi had allegedly told [Kristine Olson] about plaintiff's statements at the bar." Dkt. No. 1 at ¶ 24.  Plaintiff alleges that, on January 24, 2018, Grace Crimi provided a written statement in support of Kristine Olson's complaint in which the "statements attributed to [plaintiff] were entirely false." *Id.* at ¶ 25.

3

Plaintiff alleges that on January 25, 2018, DOT "imposed hardships" on him by directing his immediate supervisor, Sidney Kaine, to reassign plaintiff to a work location that would require a longer commute. *Id.* at ¶ 26.  Plaintiff alleges that, on February 9, 2018, he was subject to a disciplinary interrogation regarding the events and conversations at the bar. *Id.* at ¶ 27.  Plaintiff alleges that DOT rejected his testimony "without due process" because it did not "investigate and interview disinterested witnesses." *Id.*  Plaintiff further alleges that he was suspended without pay following the February 9 interview. *Id.*  Plaintiff filed a grievance in response to the February 15, 2018 Notice of Discipline and demanded arbitration. *Id.* at ¶ 28.  An arbitration was held on June 4, 2018. *Id.* at ¶ 29.  Plaintiff alleges that the charges in the February 15, 2018 Notice of Discipline were false and that the disciplinary proceeding was retaliation against him "for having opposed them in the prior disciplinary proceeding." *Id.* at ¶ 31.

On July 31, 2018, plaintiff and DOT entered into an Arbitration Agreement to resolve the February 15, 2019 Notice of Discipline, under which plaintiff was issued a formal counseling memorandum and permitted to return to work. Dkt. No 1-9.  The Agreement further provided for the removal of "any materials related to the alleged conduct of January 22, 2018 from plaintiff's personal history file." *Id.*

On December 27, 2018 plaintiff commenced a civil action against Grace Crimi in the Onondaga County Supreme Court. Dkt. No. 1-11.  In this action, plaintiff alleges that Ms. Crimi maliciously reported false discriminatory statements to [plaintiff's] employer.  He brings causes of action for tortious interference with an employment relationship, defamation, and intentional infliction of emotional harm. *Id.*  As of the filing of the instant

federal action, *Steele v. Crimi* is still pending. Dkt. No. 1 at ¶ 39.

On November 18, 2019, plaintiff "was called into a disciplinary interrogation at which he was advised that he was being subjected to disciplinary proceedings as a result of his having filed a civil lawsuit against Grace Crimi." *Id.* ¶ 40.  During the interrogation, Defendant Elatisha Kirnon, an employee relations officer of GOER, asked plaintiff why he filed the lawsuit against Ms. Crimi.  *Id.*  Plaintiff responded that he did so because Ms. Crimi lied about him.  *Id.*  "Ms. Kirnon then accused him of misconduct in having filed a lawsuit and claimed his lawsuit against Crimi constituted 'retaliation' for Crimi having reported him to his employer, the DOT."  *Id.*  "Ms. Cox, of the DOT, also advised [plaintiff] that he was not to share the details of the disciplinary interrogation with his lawyer and that his having discussed Crimi's allegations with his lawyer in the past violated DOT ' policy' by having failed to obtain the permission of the DOT before sharing the details of Crimi's allegations with his lawyer in the civil suit; additionally, Ms. Cox, directed him to withhold any information he obtained during the third disciplinary interrogation with his lawyer." *Id.*

On December 16, 2019, DOT issued a third Notice of Discipline to plaintiff, charging him with retaliating against Kristine Olson by filing a lawsuit against her daughter, Grace Crimi, which caused Ms. Olson to be afraid to participate as a witness "in an unrelated discrimination investigation." Dkt. No. 1-13.  Plaintiff alleges that the December 16, 2019 Notice of Discipline is unlawful retaliation for "his constitutionally protected right to file a civil lawsuit," and "for having opposed [DOT's] prior efforts to discharge him from his employment." Dkt. No. 1 at ¶¶ 49-51.

On or about November 21, 2019, plaintiff filed a Charge of Discrimination with the

5

Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 9; Dkt. No. 1-1.  On

December 2, 2019, the EEOC issued a "Dismissal and Notice of Rights" or "Right to Sue"

letter. Dkt. No. 1-2.[2]

## III.   STANDARDS OF REVIEW

### a.    Fed. R. Civ. P. 12(b)(1)

A motion brought pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject matter

of the Court to address a case or certain claims in the case.  A case or claim is to be

dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) when

the district court lacks the statutory or constitutional power to adjudicate it.  *Makarova v.*

*United States*, 201 F. 3d 110, 113 (2d Cir. 2000).

### b. Fed. R. Civ. P. 12(b)(6)

On a Rule 12(b)(6) motion, the Court must accept "all factual allegations in the

complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v.*

*Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet

does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a

legal conclusion couched as a factual allegation").  "'[I]n adjudicating a Rule 12(b)(6)

motion, a district court must confine its consideration to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

---

[2]Defendants note that the Right to Sue letter indicates that "[t]he facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC." Dkt. No. 1-2 at p. 2.

reference, and to matters of which judicial notice may be taken.'" *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052 (KMK), 2020 WL 3618190, at *3 (S.D.N.Y. July 2, 2020)(quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The complaint must contain "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Twombly,* 550 U.S. at 555. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible," the complaint should be dismissed. *Twombly*, 550 U.S. at 570.

## IV. DISCUSSION

### a. Title VII Retaliation Claims

Plaintiff's First Cause of Action alleges unlawful retaliation in violation of Title VII. *See* Compl. ¶¶ 52-72.

#### 1. Claims Against Individual Defendants

All Title VII claims against the individual defendants are dismissed with prejudice. *See Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012)("Title VII does not impose liability on individuals . . . ."); *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010)("[T]he remedial provisions of Title VII ... do not provide for individual liability.").

### 2.   Protected Activity

Defendants contend that plaintiff did not engage in activity protected under Title VII such to make out a Title VII retaliation claim.   Title VII provides that "[i]t shall be unlawful . . . for an employer to discriminate against any of [its] employees. . . because [an employee] has opposed any practice made unlawful by this subchapter, or because [an employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  To establish a prima facie case for retaliation, the plaintiff must show that: (1) he engaged in protected activity; (2) the employer was aware of the activity; (3) the employer took adverse actions; and (4) a causal connection exists between the protected activity and the adverse action.  *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

Plaintiff argues that he engaged in protected activity by opposing the disciplinary actions against him which, he contends in the Complaint, were brought for discriminatory reasons, *see* Compl. ¶ 57 ("Upon information and belief, GOER and the DOT have prosecuted Mr. Steele on account of his sex, because he is a male accused of improper conduct by a female."), and which allege, he contends, that he engaged in discriminatory conduct. *See* Pl. Mem. L. at 23 ("Here, Mr. Steele was plainly engaged in opposing an employment proceeding which had twice accused him of engaging in discrimination

8

against others.").  His purported opposition included efforts challenging the disciplinary charges. *See id.* at 24 ("Here, Plaintiff did more than answer questions as part of an investigation by Defendant. He actually instigated a complaint by filing grievances opposing all three termination efforts by the DOT, an act that constitutes opposition under the statute.").  However, plaintiff's opposition to the disciplinary actions, by itself, does not plausibly establish that plaintiff presented a protest or opposition protected under Title VII. "'Protected activity' refers to a plaintiff's action 'taken to protest or oppose statutorily prohibited discrimination.'" *Hatch v. Brennan*, 792 F. App'x 875, 879 (2d Cir. 2019)(quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).  The disciplinary actions against plaintiff did not concern statutorily prohibited discrimination but rather concerned allegations of plaintiff's improper work-related conduct.  The fact that plaintiff's conduct was against females, and that plaintiff believes that he was prosecuted because of his gender, does not make the disciplinary proceedings about any practice made unlawful by Title VII.  *See, e.g., Natofsky v. City of New York*, 921 F.3d 337, 353–54 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2668, 206 L. Ed. 2d 822 (2020)("[A]ppealing a negative performance review is not a protected activity that can give rise to a retaliation claim. . . . The record shows that Natofsky was not protesting discrimination in his appeal but offering a defense of why he may have been slow in responding to emails.").

Further, plaintiff presents insufficient allegation plausibly establishing that his employer was aware that his opposition to the disciplinary proceedings was a form of Title VII opposition.  Plaintiff asserts that "Defendant, DOT, the employer, was aware of Mr. Steele's protected activities because Mr. Steele filed a grievance against the DOT for

conducting inappropriate and discriminatory investigation and DOT was specifically
advised in advance of the third disciplinary proceeding, that the union lawyer would
oppose any effort by the DOT or GOER to discipline Mr. Steele for having filed a civil
lawsuit."  Compl. ¶ 63.  Although plaintiff alleges in the Complaint that participation under
Title VII "occurs when an employee files a labor grievance in the employee raises issues
of unlawful employment discrimination in such a grievance,"  Compl ¶ 61, and asserts that
he "filed grievances through his union opposing all three termination efforts by the DOT,"
*id.* ¶ 62, he does not allege in the Complaint that his grievances raised issues of unlawful
employment discrimination in violation of Title VII.  Indeed, the one grievance attached to
the Complaint, Dkt. No. 1-4, indicates that Plaintiff grieved the December 22, 2017 Notice
of Discipline ("NOD") because, he contended, he was suspended without just cause, the
proposed discipline violated the notion of progressive discipline, and several of the
charges in the NOD were procedurally defective under the terms of his collective
bargaining agreement.  He makes no claim in this grievance that the disciplinary action
was commenced for unlawful discriminatory reasons under Title VII. *See* Compl. ¶ 16
("After Mr. Steele received a Notice of Discipline for violating the Positive and
Productive Workplace Policy, on December 26, 2017, the New York State Public
Employee Federation and in response filed grievances against the DOT seeking
arbitration to dispute the alleging [sic] the charges which were false.").  The Complaint
makes not mention that the other grievances he filed were to oppose actions made
unlawful under Title VII.  *See* Compl. ¶ 28 ("On February 15, 2018, Mr. Steele was issued
a Notice of Discipline by his employer seeking his termination for the alleged January 22,
2018, conduct. . . .  Within fourteen days of receipt of the February 15, 2018, NOD Mr.

Steele filed a grievance and demanded arbitration."); ¶ 54 ("Mr. Steele is an employee of the State of New York who lawfully filed grievances to oppose multiple attempts by the DOT to terminated his employment. In filing those grievances, he was merely taking advantage of the provisions of his union contract that entitled him to demand arbitration to refute the accusations of wrongdoing.").

The fact that DOT was "specifically advised in advance of the third disciplinary proceeding ... that the union lawyer would oppose any effort by the DOT or GOER to discipline Mr. Steele for having filed a civil lawsuit" also does not provide a plausible basis to conclude that the employer was aware that plaintiff's challenges to the disciplinary proceedings constituted opposition to conduct made unlawful by Title VII.  Plaintiff's civil lawsuit against Grace Crimi, his accuser in one the disciplinary actions, also does not give the employer notice that plaintiff was opposing conduct made unlawful under Title VII. That lawsuit does not allege any violation of Title VII by his employer, but rather seeks damages against Ms. Crimi for defamation, "tortious interference with employment relationship," and "intentional infliction of emotional harm." Dkt. No. 1-11 (*Steele v. Crimi* Complaint dated December 18, 2018).

"While it is unnecessary for an individual to specifically invoke the word discrimination when complaining in order to alert [his] employer to [his] protected activity, there must be some basis to conclude that the employer was aware that the plaintiff engaged in protected activity."  *Lucio v. New York City Dep't of Educ.*, 575 F. App'x 3, 6 (2d Cir. 2014).  That basis is absent here.  Plaintiff fails to plausibly show that the employer was aware that his opposition to the disciplinary actions or any other relevant conduct constituted opposition to conduct made unlawful by Title VII.  Thus, plaintiff fails

to plausibly demonstrate that the employer was aware that he was contesting practices made unlawful by Title VII by virtue of his opposition to the disciplinary charges brought against him.

Plaintiff also contends that he engaged in protected conduct by participating in the investigations surrounding his disciplinary charges. *See* Pl. Mem. L. at 24-25 ("Plaintiff's disclosure of a narrative containing information by which the EEOC and his attorney could substantiate his claim of sex discrimination constitutes protected participation."); *id.* at 25 ("The internal investigation in which Plaintiff participated was also a covered proceeding under Title VII.  Though Mr. Steele did not file his EEOC complaint until November 21, 2019, he did file a complaint with his employer that triggered an internal investigation that would supplement a subsequent EEOC investigation.").  Plaintiff's participation in the investigations and proceedings surrounding the disciplinary actions taken against him does not plausibly establish that he engaged in protected participation under Title VII. Plaintiff's disciplinary proceedings were not investigations or proceedings brought under Title VII and, therefore, plaintiff does not plausibly make out a Title VII retaliation claim based upon his alleged participation in such proceedings. *See Townsend v. Benjamin Enters.*, 679 F.3d 41, 49 (2d Cir. 2012)("An 'investigation . . . under this subchapter' thus plainly refers to an investigation that 'occur[s] in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC.'")(quoting *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1174 (11th Cir. 2000)); *Kauffman v. Maxim Healthcare Servs., Inc.*, No. 04-cv-2869, 2006 WL 1983196, at *5 (E.D.N.Y. July 13, 2006)

("Under the 'participation clause,' a plaintiff engages in protected activity by participating in a proceeding brought under Title VII.")(citing 42 U.S.C. § 2000e-3(a); *Deravin v. Kerik*, 335 F.3d 195, 203-04 (2d Cir. 2003)); *Bick v. City of N.Y.*, No. 95-cv-8781, 1997 WL 381801 at *4, n. 4 (S.D.N.Y July 10, 1997)(To invoke the participation clause, the "participation must be in an investigation or proceeding covered by Title VII, and thus not in an internal employer investigation."). The fact that the information obtained during the disciplinary actions was eventually used by plaintiff and the employer in connection with the later-filed EEOC complaint does not change this conclusion. *See Townsend*, 679 F.3d at 49. Plaintiff's reliance on *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999), is misplaced. In *Clover*, the Eleventh Circuit held:

> Our previous opinion erred by its exclusive focus on whether the employee was participating in an EEOC investigation or an internal investigation conducted by the employer. Here, we recognize that, at least where an employer conducts its investigation in response to a notice of charge of discrimination, and is thus aware that the evidence gathered in that inquiry will be considered by the EEOC as part of its investigation, the employee's participation is participation "in any manner" in the EEOC investigation. Accordingly, by participating in her employer's investigation conducted in response to an EEOC notice of charge of discrimination, Clover engaged in statutorily protected conduct under the participation clause.

*Id.* at 1353.

In the instant case, there are insufficient allegations in the Complaint that the employer conducted its investigations in the disciplinary proceedings in response to a notice of charge of discrimination before the EEOC. Even if plaintiff did file some type of complaint with his employer that "triggered an internal investigation that would supplement a subsequent EEOC investigation," Pl. Mem L. at 25, the allegation is of something that occurred in advance of the EEOC investigation - not in response to an EEOC notice of

13

charge of discrimination.  Further, without some allegation that the plaintiff was challenging the disciplinary proceedings because they violated his rights under Title VII, this case, unlike in *Clover*, fails to present a plausible basis to conclude that the employer was gathering evidence in the disciplinary matters to be used in an EEOC investigation.

For these reasons, plaintiff's Title VII retaliation claims are dismissed.  Because it is possible that plaintiff could plead facts plausibly supporting the conclusion that he notified the employer that he was challenging his disciplinary proceedings because the proceedings violated his rights under Title VII, and because the Court generally allows a party one opportunity to replead non-frivolous claims, dismissal of the Title VII retaliation claims are dismissed without prejudice to repleading.   Inasmuch as plaintiff might replead the Title VII retaliation claims, the Court declines at this time to determine whether the State of New York and GOER are proper parties under these putative Title VII claims. Likewise, the Court declines at this time to determine whether the putative Title VII claims are timely.

**b.  Section 1983 Claims**

Plaintiff brings several claims pursuant to Section 1983.  These claims are discussed below.

### 1.  Eleventh Amendment Doctrine of Sovereign Immunity

As defendants argue, the Eleventh Amendment of the United States Constitution bars a suit in law or equity in federal court against a State, absent the State's consent to such a suit or Congressional abrogation of immunity. *Seminole Tribe of Fla. v. Florida*, 517 US 44, 54 (1996).  "As a general matter, state governments and their agencies may not be

sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 219-20. (N.D.N.Y. 2014). "[I]t is beyond dispute that the State of New York and its agencies have never consented to be sued in federal court." *Dube v. State Univ. of N.Y.*, 900 F2d 587, 594-95 (2d Cir. 1990), *cert. denied*, 501 U.S. 1211 (1991). Congress has not abrogated the states' sovereign immunity for claims brought under Section 1983. *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010). Further, it is well-settled that sovereign immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)(internal quotations and citations omitted). "To the extent that a state official is sued for damages in his [or her] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993). "The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities." *Gray-Davis v. New York*, 2015 U.S. Dist. LEXIS 58619, at *12 (N.D.N.Y. Mar. 27, 2015), *adopted*, 2015 U.S. Dist. LEXIS 58373 (N.D.N.Y. May 5, 2015).

Defendants argue that all claims seeking to recover money damages under Section 1983 against the State of New York, DOT, GOER, and the individual defendants in their official capacities must be dismissed because they are barred by Eleventh Amendment sovereign immunity. In response, plaintiff argues that he asserts Section 1983 claims for prospective injunctive relief against the individual defendants, acting in their official

15

capacities, that should be allowed to proceed under the *Ex parte Young* doctrine. However, the Complaint does not articulate any request for injunctive relief or for any other form of prospective relief.  Plaintiff's argument that the catch-all phrase seeking "other and further relief" in his "Prayer for Relief" could encompass a claim for prospective injunctive relief is insufficient.  A request for "other and further relief" fails to give defendants notice that the plaintiff is requesting that an order for injunctive relief be entered against them. Further, the request makes it impossible for the Court to fashion any type of specific injunctive relief.  Moreover, even if the Complaint could be construed to contain a request for prospective injunctive relief, plaintiff's requests for monetary relief would still be barred by sovereign immunity regardless of the *Ex parte Young* exception for prospective injunctive relief.  Accordingly, all claims seeking to recover money damages under Section 1983 against the State of New York, DOT, GOER, and the individual defendants in their official capacities are dismissed as barred by the Eleventh Amendment doctrine of sovereign immunity.  If plaintiff repleads any claims in his action and seeks specific prospective relief, the Court will determine then whether *Ex parte Young* allows claims against the individual defendants in their official capacities for such prospective relief.

### 2.  "Persons" Under Section 1983

Defendants argue that notwithstanding the fact that plaintiff's Section 1983 claims against the State of New York, DOT, and GOER are barred by sovereign immunity, they must also be dismissed because the State of New York and its agencies are not "persons" amenable to suit under Section 1983. Def. Mem. L. at 8 (citing, *inter alia*, *Will v Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989)("[A] State is not a person within the meaning

16

of § 1983."); *Davis v State of New York*, 124 A.D.2d 420, 423 (3d Dep't 1986)("[T]he law is unequivocal that [Section 1983] does not give rise to a cognizable claim against the State or a department thereof."); *Brady v. State*, No. M-80869, 2012 N.Y. Misc. LEXIS 3935, at *2 (Ct. Cl. June 28, 2012) ("Finally, no cause of action against the State of New York exists for alleged violations of an individual's rights secured by the United States Constitution, nor is the State a 'person' amenable to suit under 42 U.S.C. § 1983. Thus, the Court does not have jurisdiction to hear actions based on allegations that an individual's rights secured by the Fourteenth Amendment have been violated.")(citing, *inter alia*, *Will*, 491 U.S. 58)).  In response, plaintiff argues that the individual defendants, sued in their official capacities for prospective injunctive relief, are considered "persons" under Section 1983.   Plaintiff's position is, at this time, without merit.  First, as stated above, the Complaint cannot reasonably be interpreted to seek prospective injunctive relief against any of the defendants. Second, defendants' motion does not suggest that the individual defendants are not "persons" under Section 1983.  Rather, defendants' motion seeks dismissal of the Section 1983 claims against the State of New York, GOER, and DOT because these three defendants are not "persons" subject to liability under Section 1983. Accordingly, plaintiff's claims under Section 1983 against the State of New York, GOER, and DOT are dismissed because they are not "persons" under Section 1983.

### 3. Plaintiff's Section 1983 Claims Against the Individual Defendants

It appears Plaintiff brings claims under Section 1983 for: (1) violation of the Due Process Clause ("Second Cause of Action" and "Fourth Cause of Action"); (2) retaliation ("Second Cause of Action"); (3) deprivation of his Seventh Amendment right to a jury trial

17

("Third Cause of Action"); and (4) violation of the Equal Protection Clause ("Fifth Cause of Action").  Defendants argue that to the extent the Complaint can be construed to allege Section 1983 claims against Valerie Cox or Elatisha Kirnon in their individual capacities, these claims must be dismissed for failure to state a claim. Plaintiff opposes these contentions, although he does so in conclusory fashion and states the wrong standard for review.  *See* Pl. Mem L. at 26-27; *id.* at 26.[3]

## A.  First Amendment Retaliation

Defendants contend that to the extent plaintiff brings a Section 1983 claim for First Amendment speech-based retaliation, his claim fails as a matter of law because he has not engaged in protected speech.  Dkt. No. 11-1 at 14.  Plaintiff responds:

> Although it is not necessary at this stage in litigation to flesh out the particulars as to why he was engaging in protected speech when at a private restaurant, it is instructive to note that the plaintiff's comments regarding having been prosecuted falsely by the state in his employment disciplinary matter is a matter of public concern and he was acting well within his rights to speak out against such false prosecution. The claim that his speech was peppered with racist and sexist vitriol was false and was offered by the defendants as mere pretext for having punished him for having complained of unfair treatment. During the interrogation on that complaint he was questioned about his complaints as though such speech was itself to be regulated. Note, too, that the filing of his state court action too is a form of speech. The defendants exposed the plaintiff to all of the dangers of a disciplinary action and possible loss of his property interest in continued employment, by having charged him with misconduct by reason of his exercising his Constitutionally protected right to file a civil action in state court. The interview he endured

---

[3]Plaintiff asserts:

When a federal court reviews the sufficiency of a complaint, before the reception of any evidence through discovery, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. "[I]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [*Conley*] *v. Gibson*, 355 U.S. 41, 45-6 (1957).

reveals the intent of the defendant to deprive him of access to the courts. Dkt. 14 at 27.

A public employee who makes a First Amendment speech-based claim of employment retaliation pursuant to § 1983 must show that: (1) the plaintiff engaged in protected speech; (2) he suffered an adverse employment decision, and (3) there is a causal connection between his speech and that adverse employment decision, so that it can be said that the plaintiff's speech was a motivating factor in the adverse employment action. *See Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L.Ed.2d 689 (2006); *Cioffi v. Averill Park Central School Dist. Board of Ed.*, 444 F.3d 158, 162 (2d Cir. 2006); *Miller v. City of Ithaca*, 2010 WL 3809842, at *9 (N.D.N.Y. Sept. 22, 2010).  It is well established that a public employee's speech may be constitutionally protected only if he has spoken out as a citizen, not as an employee, on matters of public concern. *See Garcetti*, 547 U.S. at  418; *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). If the employee "either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech' . . . ."  *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) (quoting *Garcetti*, 547 U.S. at 418).

Speech is considered to deal with matters of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011)(internal quotation marks omitted).  Whether speech meets this standard is

19

"determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Meyers*, 461 U.S. 138, 146-48 (1983); *see Tiltti v. Weise*, 155 F.3d 596, 602 (2d Cir. 1998).  "It is the providence of the court, as a matter of law, to determine whether a public employee's speech by 'context, form, and content' constitutes a public concern." *Morrison v. Johnson*,  2006 WL 2811802, at *12 (N.D.N.Y. September 28, 2006) (quoting and citing *Connick*, 461 U.S. at  147-48); *see also Johnson*, 342 F.3d at 112 (Although this inquiry is "fact-intensive," the Court may resolve this issue as a matter of law.).

     "In deciding whether speech addresses a matter of public concern, 'the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose.'" *Harris v. South Huntington School Dist.*, 2009 WL 875538, at * 12 (E.D.N.Y. March 30, 2009)(quoting *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999)).  "In performing its analysis, a court 'must look behind pretextual 'public concern' rationales proffered by plaintiffs and attempt to discern whether their conduct, taken as a whole, was actually meant to address matters of public concern or was simply a vehicle for furthering private interests.'" *Id.* (quoting *Pappas v. Giuliani*, 118 F. Supp.2d 433, 444 (S.D.N.Y. 2000)).  Speech that "primarily concerns an issue that is personal in nature and generally related to [the speaker's] own situation . . .  does not address matters of public concern." *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011)(internal quotation marks omitted).  "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo*, 514 F.3d at 189 (quoting

*Lewis v. Cowen*, 165 F.3d 154, 63-64 (2d Cir. 1999)).

Based on the allegations in the Complaint and its attachments, plaintiff's speech during the disciplinary interrogations he was subjected to, at MJ's Music Bar, and in his complaint in his state-court action against Ms. Crimi concerned only plaintiff's personal grievances.  The same can be said for his grievances and opposition to the Notices of Discipline.  Plaintiff does not allege plausible facts indicating that his speech in these forums concerned matters of public concern.  Therefore, plaintiff's First Amendment speech-based retaliation claim must be dismissed.  Because it is possible, even if unlikely, that plaintiff could plead facts plausibly supporting a claim that plaintiff's speech concerned matters of public concern, dismissal is without prejudice to repleading.

### B. Equal Protection and Due Process Claims

Defendants move to dismiss the equal protection and due process claims because, they contend, the Complaint "is wholly devoid of any plausible allegation that the individual defendants, Elatisha Kirnon and Valerie Cox, took any action against plaintiff that was motivated by his gender or deprived him of due process." Dkt. No. 11-1 at 14.  Defendants point out that the Complaint contains only a single paragraph, paragraph 40, referencing any specific actions of Elatisha Kirnon or Valerie Cox.  Defendants contend that the allegations in this paragraph, even if taken as true for the purposes of this motion, do not make out a claim that the defendants violated the Equal Protection Clause or the Due Process Clause. *Id.* at 15.  Plaintiff does not specifically respond to this argument.  Nevertheless, the Court will examine both claims.

### Due Process

In the Second Cause of Action, which is labeled a due process violation, Plaintiff asserts that "Defendants, acting jointly and severally, did adversely impact Plaintiff's employment and adversely impact Plaintiff's right to protection against impairment of his employment and property interest in same, because of his sex and for having engaged in protected activity, and in retaliation for Plaintiff having exercising his rights under federal and state constitutions and laws, including his right to free speech, right to redress in the courts, and right to communicate with his already retained counsel in a civil matter." Dkt. 1 at ¶ 74.  In the Fourth Cause of Action, which is not labeled, plaintiff asserts:

> 85. Defendants, acting jointly and severally, did adversely impact Plaintiff's property right in continued employment and did adversely impact Plaintiff's right to protection against impairment because of his gender and for having engaged in protected activity, and in retaliation for Plaintiff exercising his rights under federal and state constitutions and laws.
>
> 86. More particularly, the defendants attempted to interfere with plaintiff's communication with his counsel by threatening a job action against him if he consulted with his already retained counsel concerning a disciplinary interrogation conducted by GOER and the DOT.
>
> 87. More specifically, the defendants advised the plaintiff that he was forbidden from discussing the questions the defendants had asked him during a disciplinary interrogation.
>
> * * *
>
> 90. Defendants acted with intent to violate or with deliberate or reckless indifference to Plaintiff's clearly established Fourteenth Amendment rights.

Dkt. 1 at ¶¶ 85-87, 90.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  "The Due Process Clause thus 'bars arbitrary, wrongful government

actions, and guarantees procedural fairness when a state action deprives a citizen of a

protected interest in life, liberty, or property.'" *Bell v. New York State Dep't of Corr. & Cmty.*

*Supervision*, No. 1:17-CV-937, 2019 WL 1305809, at *8 (N.D.N.Y. Mar. 22, 2019)(quoting

*Wiesner v. Rosenberger*, No. 98-CV-1512, 1998 WL 695927, at *3 (S.D.N.Y. Oct. 6,

1998), in turn citing *Daniels v. Williams*, 474 U.S. 327, 330–32 (1986)). "The fundamental

requirement of the Due Process Clause is that an individual be given the opportunity to be

heard at a meaningful time and in a meaningful manner." *Patterson v. City of Utica*, 370

F.3d 322, 336 (2d Cir. 2004) (internal quotations omitted).  "To successfully state a denial

of due process claim under 42 U.S.C. § 1983, 'a plaintiff must first identify a property right,

second show that the government has deprived him of that right, and third show that the

deprivation was effected without due process.'" *Bell*,  2019 WL 1305809, at *9 (quoting

*J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013)(internal quotations and emphasis

omitted)).

    Based on the allegations in the Complaint, the majority of plaintiff's job-related

deprivations occurred in connection with the NODs through which he was afforded

constitutionally adequate notice and a pre-deprivation opportunity to be heard.  The

Complaint alleges, however:

> 27.  On February 9, 2018, Mr. Steele was subjected to a disciplinary
> interrogation at which he was questioned about the events and
> conversations at [MJ's Music Bar]. Mr. Steele advised the DOT
> representative that the claimed improper statements did not occur and that
> witnesses were available to disprove the claim. Rather than investigate and
> interview the disinterested witnesses the DOT rejected the testimony of Mr.
> Steele, and without due process, the DOT immediately ordered Mr. Steele to
> turn in his State ID.  Additionally, he was ordered out of work, and
> suspended without pay. The lack of due process was evidenced by the DOT
> deciding to punish Mr. Steele without a proper investigation and without

> having first issued a NOD. In short, the DOT accepted the claims of Ms.
> Crimi without testing her claims and without corroboration. The decision to
> terminate Mr. Steele was done without any investigation.

Dkt. 1 at ¶ 27.  Even assuming that the DOT's determination to suspend plaintiff without

pay pending the resolution of the February 15, 2018 NOD was done without proper due

process,[4] there is no allegation that either Ms. Kirnon or Ms. Cox was personally involved

in the suspension decision.  "To hold an individual defendant liable under § 1983, the

plaintiff must show that the defendant was personally involved in the challenged conduct."

*Rys v. Grimm*, No. 6:19-CV-1251 (FJS/ATB), 2021 WL 827671, at *8 (N.D.N.Y. Mar. 4,

2021)(citing *Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003)).  "The

Second Circuit recently held 'that after *Iqbal*, there is no special rule for supervisory

liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant,

through the official's own individual actions, has violated the Constitution.' *Iqbal*, 556 U.S.

at 676, 129 S. Ct. 1937. . . .  The violation must be established against the supervisory

official directly.'" *Id.* (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)); *see*

*Jeanty v. City of Utica*, No. 6:16-CV-00966 (BKS/TWD), 2021 WL 149051, at *33

(N.D.N.Y. Jan. 14, 2021) ("[T]he Second Circuit recently held that the [*Colon v. Coughlin*,

58 F.3d 865 (2d Cir. 1995)] test was abrogated by the Supreme Court's decision in

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009).")(citing

*Tangreti*, 983 F.3d at 618); *Doe v. Zucker*, No. 1:20-CV-840 (BKS/CFH), 2021 WL

619465, at *28 (N.D.N.Y. Feb. 17, 2021)(In *Tangreti,* the Second Circuit "clarified that

---

[4]Without the parties addressing whether a suspension without pay invokes due process, or whether plaintiff was given the opportunity to be heard at a meaningful time and in a meaningful manner before he was suspended without pay, the Court declines to arrive at a decision whether plaintiff was deprived of due process by the suspension determination.

24

'there is no special rule for supervisory liability' and explained that 'a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'")(quoting *Tangreti*, 983 F.3d at 612, in turn quoting *Iqbal*, 556 U.S. at 676). Direct participation requires "'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Zehner v. Jordan-Elbridge Bd. of Educ.*, No. 5:11-CV-1202 (NAM/ML), 2019 WL 4083040, *7 (N.D.N.Y. Aug. 29, 2019) (quoting [*Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016)]); *see Rys*, 2021 WL 827671, at *8 (same). Here there is no allegation of either Ms. Kirnon or Ms. Cox's direct participation in the suspension decision, or for that matter, in the other alleged job-related deprivations.

Furthermore, for the reasons discussed above, the Complaint fails to plausibly allege that plaintiff was denied of the right to free speech. The Complaint also fails to plausibly allege that plaintiff was denied the right to seek redress in the courts or the right to communicate with his retained counsel. Indeed, the Complaint has attached to it plaintiff's state-court complaint in the action against Grace Crimi, evincing that plaintiff did present a case to the courts to redress his grievances. Dkt. 1-11. Moreover, the state-court complaint is signed by plaintiff's current counsel, providing a reasonable inference that plaintiff and his counsel discussed the matter before counsel signed and served the complaint. The allegations in the Complaint here, which recount the circumstances of the November 18, 2019 interrogation, also evinces that plaintiff discussed the circumstances of that interrogation with his counsel. For these reasons, plaintiff's due process claims are dismissed. Because it is possible that plaintiff could allege plausible facts demonstrating

that one or both of the individual defendants had personal involvement in a due process

violation, dismissal is without prejudice to repleading.

**Equal Protection**

"The Fourteenth Amendment to the United States Constitution declares that '[n]o

State shall ... deny to any person within its jurisdiction the equal protection of the laws.'"

*Brown v. City of Oneonta*, 221 F.3d 329, 336–37 (2d Cir. 2000) (alteration in original)

(quoting U.S. Const. amend. XIV, § 1).  "The Equal Protection Clause prohibits

government officials from intentionally discriminating against individuals based on their

race, ethnicity, gender or national origin." *Poole v. Hawkins*, No. 18-CV-443 (MKB), 2021

WL 695119, at *8 (E.D.N.Y. Feb. 23, 2021)(citing *Ross v. New Canaan Env't Comm'n*, 532

F. App'x 12, 13 (2d Cir. 2013)("To state a claim for an equal protection violation,

appellants must allege that a government actor intentionally discriminated against them on

the basis of race, national origin or gender.")(interior quotation marks and citation

omitted)).

Plaintiff's equal protection cause of action alleges:

93. The above described adverse actions were taken against the Plaintiff on
account of his gender and the gender of his accuser; and for having
engaged in protected activity that in violation of the Equal Protection Clause
of the United States Constitution and the Fourteenth Amendment to the
United States Constitution, thereby entitling Plaintiff to appropriate relief for
his damage.

94. In the "me too" age, defendants, as government agencies, and as
individuals tasked with the job creating a safe work environment, unlawfully
converted the need to listen to female who complains of sexual misconduct
by male [sic] into a bias in which the agency not only listened to such
accusations and investigates, but also concluded from the outset that all
such allegations were true simply because they were made by female [sic]
against male [sic].

26

95. Here, the GOER was established in response to the "me-too" movement has [sic] adopted a policy whereby accusations made by female [sic] are necessarily true, and the male accused are [sic] necessarily guilty of the alleged misconduct. This case perfectly illustrates a gross overreaction to actual inequities in our society and has resulted in unlawful action being taken against a male on account of his sex. The government defendants have responded by systematically discriminate [sic] against the plaintiff because he is male [sic] accused of misconduct by female [sic].

Dkt. No. 1 at ¶¶ 93-95.

It is unclear what theory or theories plaintiff's equal protection claim proceeds on.

*See Bell*, 2019 WL 1305809, at *7–8;[5] *Poole*, 2021 WL 695119, at *8.[6]  To the extent

---

[5]The Court in *Bell* wrote:

There are a number of common methods for pleading an equal protection claim." *Kisembo v. N.Y.S. Office of Children & Family Servs.*, 285 F. Supp. 3d 509, 523 (N.D.N.Y. 2018).  First, "[a] plaintiff could point to a law or policy that 'expressly classifies persons on the basis of race.'" *Floyd v. City of N.Y.*, 959 F. Supp. 2d 540, 570 (S.D.N.Y. 2013) (quoting *Brown v. City of Oneida*, 221 F.3d 329, 337 (2d Cir. 1999)). Second, "a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner." *Brown*, 221 F.3d at 337. *Third*, "[a] plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Floyd*, 959 F. Supp. 2d at 570 (internal quotations omitted).

2019 WL 1305809, at *7–8.

[6]The Court in *Poole* wrote:

To state a claim for equal protection, a plaintiff can proceed on both a selective enforcement and a class-of-one theory. *See Jordan v. N.Y.C. Bd. of Elections*, 816 F. App'x 599, 603–04 (2d Cir. 2020). Where a plaintiff is treated unequally compared with others similarly situated, and when such treatment is based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person," the facts give rise to a claim of selective enforcement. *LaTrieste Rest. & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)(quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)); *see also Bush v. City of Utica*, 558 F. App'x 131, 134 (2d Cir. 2014) (holding that plaintiffs stated an equal protection claim when they alleged that the fire department had a policy of not entering low-income properties). Similarly, equal protection claims based on a so-called "class of one" theory involve claims "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (first citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); and then citing *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cnty.*, 488 U.S. 336 (1989)).

2021 WL 695119, at *8.

plaintiff proceeds on the theory that the GOER has a policy that violates his equal protection rights, he fails to plead facts plausibly establishing that either Ms. Kirnon or Ms. Cox were personally involved in developing the policy or in administering the policy in an intentionally discriminatory manner.  To the extent plaintiff proceeds on a selective enforcement or class-of-one theory, the claim is insufficient because he does not allege facts plausibly establishing that either Ms. Kirnon or Ms. Cox intentionally treated him differently compared with others similarly situated.  Also, he does not plead that he was treated differently than similarly situated comparators.  *See Poole,* 2021 WL 695119, at *8 ("A plaintiff asserting a selective enforcement or class-of-one claim must present evidence of similarly situated comparators.")(collecting cases).  The equal protection claim must be dismissed. Because it is possible that plaintiff could allege a viable equal protection claim against the individual defendants, the claim is dismissed without prejudice to repleading.

## C.  Seventh Amendment Claim

In his Third Cause of Action, plaintiff alleges that the defendants violated his Seventh Amendment rights by "subjecting him to employment discipline for having filed a civil action unrelated to his employment." Dkt. No. 1 at ¶ 80.  He contends that "Defendants willfully and intentionally attempted to compel the plaintiff to dismiss a civil defamation lawsuit filed against Grace Crimi," *id.* ¶ 81, and that "[o]n December 16, 2019, Defendants . . . attempted to dissuade Plaintiff from continuing his civil lawsuit against Grace Crimi by issuing a Notice of Discipline."  *Id.* ¶ 82.  He contends that "Defendants acted with intent to violate or with deliberate or reckless indifference to Plaintiff's clearly established Seventh Amendment . . . right to trial by jury in civil [sic] case." *Id.* ¶ 83.

28

As indicated above, plaintiff was not dissuaded by the defendants' statements or actions but rather continued with the lawsuit against Ms. Crimi.  As plaintiff states in the Complaint, he has been able, through counsel, to file this lawsuit and it remains pending as of the date of the Complaint. Dkt. No. 1 at ¶ 38-39.  Thus, plaintiff fails to allege facts plausibly establishing that either Ms. Kirnon or Ms. Cox violated plaintiff's Seventh Amendment right to a civil jury trial, and the claim against them must be dismissed. *See Dixon v. Von Blackensee*, No. 17-CV-7359 (NSR), 2019 WL 2433597, at \*12 (S.D.N.Y. June 11, 2019)("Plaintiff asserts no facts anywhere in his complaint alleging that he was denied his right to a civil jury trial, let alone that it was due to Defendant's conduct. . . . He has not mentioned anything about losing his right to a jury anywhere. This lack of specificity is not sufficient for the plausibility threshold for Rule 12(b)(6), as a *pro se* plaintiff is still bound by the plausibility requirements articulated in *Twombly* and *Iqbal*. Accordingly, this claim . . .  is facially deficient and is dismissed on the pleadings."), *on reconsideration in part on other grounds sub nom*. *Dixon v. Blackensee*, No. 17-CV-7359 (NSR), 2020 WL 1489791 (S.D.N.Y. Mar. 27, 2020); *see, e.g., Kampfer v. Argotsinger*, No. 1:18-CV-0007 (LEK/ATB), 2020 WL 906274, at \*10 (N.D.N.Y. Feb. 25, 2020)("[B]ecause Plaintiff has made no allegations . . . and submitted no evidence that his Seventh Amendment rights were violated, the Court dismisses any claims purportedly brought under the Seventh Amendment.").

To the extent the Third Cause of Action can be construed as a First Amendment claim for denial of access to the courts, it is similarly deficient.  "[T]o state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations

29

demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury." *Vega v. Artus*, 610 F. Supp. 2d 185, 201 (N.D.N.Y. 2009) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).  Plaintiff fails to allege facts plausibly indicating that either Ms. Kirnon or Ms. Cox acted deliberately or maliciously to deprive him of access to the courts, or that plaintiff suffered an "actual injury" with respect to his ability to pursue his claims in court.  Accordingly, the Third Cause of Action must be dismissed.

### c.  Intentional Infliction of Emotional Distress

In plaintiff's Sixth Cause of Action, he asserts a state law claim for intentional infliction of emotional distress. The claim is based on the defendants' actions in prosecuting the NODs despite plaintiff's protestations and his proof that he had not been engaged in any wrongful conduct.  *See* Dkt. No. 1 at ¶¶ 96-102.

It is "'well-settled that public policy bars claims sounding in intentional infliction of emotional distress against a government entity.'" *Rivera v. City of New York*, 392 F. Supp. 2d 644, 657 (S.D.N.Y. 2005)(quoting *Lauer v. City of New York*, 240 A.D.2d 543, 659 N.Y.S.2d 57, 58 (App. Div. 1997)); *see G.E. v. City of New York*, No. 12-CV-5967 (RRM/SLT), 2017 WL 4357340, at *8 (E.D.N.Y. Sept. 29, 2017)(same).  Accordingly, plaintiff's intentional infliction of emotional distress claim against the State of New York, GOER, and DOT must be dismissed.

Further, "[u]nder New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must plead '(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and injury, and

(4) severe emotional distress.'" *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018)(quoting *Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir. 1996)); *see Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (NY 1993)(same). "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Howell*, 81 N.Y.2d at 122 (quoting *Murphy v American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (NY 1983)).

Even viewing the facts in the light most favorable to plaintiff, nothing any of the defendants did arose to the level of conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized community. Furthermore, none of the allegations pertaining to Ms. Kirnon or Ms. Cox meet these stringent requirements. Accordingly, defendants' motion must be granted on the claims for intentional and negligent infliction of emotional distress against all defendants.

## V.    CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is **GRANTED**. All Title VII claims against the individual defendants (Valerie Cox and Elatisha Kirnon) are dismissed with prejudice. Plaintiff's Title VII claims against the remaining defendants are dismissed without prejudice to repleading. All Section 1983 claims against the State of New York, DOT, and GOER are dismissed with prejudice. All Section 1983 claims against the individual defendants in their official capacities seeking monetary damages are dismissed with prejudice, but plaintiff's claims against the individual defendants in their

official capacities seeking prospective injunctive relief are dismissed without prejudice to repleading.  Plaintiff's Section 1983 claims against the individual defendants in their individual capacities alleging First Amendment speech-based retaliation are dismissed without prejudice to repleading.  Plaintiff's Section 1983 claims against the individual defendants in their individual capacities alleging a violation of due process are dismissed without prejudice to repleading.  Plaintiff's Section 1983 claims against the individual defendants in their individual capacities alleging a violation of equal protection are dismissed without prejudice to repleading.  Plaintiff's Section 1983 claims against the individual defendants in their individual capacities alleging a violation of the Seventh Amendment and First Amendment denial of access to the courts are dismissed with prejudice.  Plaintiff's  state law claims for intentional infliction of emotional distress against all defendants are dismissed with prejudice.

Plaintiff is granted leave of thirty (30) days to file an amended complaint repleading the claims that have been dismissed without prejudice.  If plaintiff fails to file an amended complaint within this period of time, the Clerk of the Court may enter judgment in favor of all defendants and close this case.

**IT IS SO ORDERED.**

Dated:   March 23, 2021

Thomas J. McAvoy
Senior, U.S. District Judge